1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CERNA VERDUZCO,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:12-cv-00041-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 16, 29) |

**I.**

**INTRODUCTION**

Plaintiff David Cerna Verduzco ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from depression, lumbar degenerative disc disease, myofascial pain syndrome, right upper extremity carpal tunnel syndrome, and trigger finger.  For the reasons set

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 9.)

1  forth below, Plaintiff's Social Security appeal shall be denied.

2  **II.**

3  **FACTUAL AND PROCEDURAL BACKGROUND**

4  Plaintiff protectively filed an application for a period of disability and disability insurance

5  benefits on January 23, 2008.  (AR 101.)  Plaintiff's application was initially denied on June 11,

6  2008, and denied upon reconsideration on October 2, 2008.  (AR 53-56; 58-61.)  Plaintiff

7  requested and received a hearing before Administrative Law Judge Howard K. Treblin ("the

8  ALJ"), which took place on April 12, 2010.  (AR 35-47.)  On June 7, 2010, the ALJ found that

9  Plaintiff was not disabled.  (AR 10-30.)  The Appeals Council declined Plaintiff's request for

10  review on November 10, 2011.  (AR 1-3; 6-7.)

11  **A.  Hearing Testimony**

12  Plaintiff testified by video at the hearing with the aid of a Spanish language interpreter.

13  (AR 37.)  At the time of the hearing, Plaintiff was 32 years of age, 5 foot eight inches tall, and

14  weighed 188 pounds, which is his normal weight.  (AR 38.)  Plaintiff speaks very little, and is

15  unable to read, English.  (AR 39.)  Plaintiff is not married and lives by himself.  (AR 38, 43.)

16  Plaintiff last worked in October of 2003.  (AR 39.)  Plaintiff stopped working due to an injury to

17  his back.  (AR 39.)  Plaintiff receives Worker's Compensation benefits of $370.00 biweekly.

18  (AR 39.)  Plaintiff's medical expenses are being paid by Worker's Compensation.  (AR 39.)

19  Plaintiff has back pain that goes down into his leg and he uses a cane that was provided by

20  Dr. Canga about a month after his injury.  (AR 39-40.)  Plaintiff's condition is stable and he

21  cannot have back surgery.  (AR 41.)  Plaintiff also injured his right hand at work.  (AR 41.)  Dr.

22  Barnett has prescribed Hydrocodone for pain and receives injections about every four months.

23  (AR 45.)  Plaintiff uses patches for his pain and the side effects cause him to be unable to have

24  sexual relations,  (AR 40-41), which has resolved with medication.  (AR 44.)

25  Plaintiff also suffers from depression.  (AR 40.)  Plaintiff has anxiety attacks where he

26  begins to sweat and he feels like his heart is beating so fast that it feels like it is going to stop and

27  he cannot breathe.  (AR 45.)  The medication that Plaintiff takes for his pain and depression help

28  him.  (AR 40.)

2

Plaintiff sees Dr. Barnett once a month and Dr. Canga every six weeks. (AR 41.) Worker's Compensation sent Plaintiff to a counselor in San Jose for his depression, but Plaintiff could not go all the way to San Jose for that type of treatment. (AR 45.)

Plaintiff has a driver's license and is able to drive. (AR 38.) During the day, Plaintiff will sometimes go walking. (AR 43.) When he gets home he rests, cooks, takes a shower, and watches television. (AR 43-44.) Plaintiff vacuums and does the grocery shopping. (AR 44.) Plaintiff's girlfriend sometimes washes his laundry. (AR 44.)

Plaintiff is able to dress himself and can use his right hand for buttons and zippers. (AR 41.) Plaintiff had surgery for his hand injury, but it did not resolve his problems so he needs to have another surgery, but the insurance will not pay for it. (AR 42.) Plaintiff is able to lift ten pounds or so, but then will have strong pain afterwards. (AR 42.) Plaintiff does not try to lift with his left hand because of his back injury. (AR 42.)

Plaintiff is able to sit comfortably in a chair for about twenty minutes, can walk about six blocks at one time, and is unable to stand in one place without leaning on something. (AR 42.) Plaintiff is able to bend over and get back up without any difficulty. (AR 43.) Plaintiff has trouble staying focused, and thinks he has problems with his memory. (AR 43.) After Plaintiff stops reading something he seems to have problems focusing on things. (AR 43.) Plaintiff hardly leaves his home due to his depression. (AR 43.)

**B. ALJ Findings**

At step two, the ALJ found that, through the date of last insured, Plaintiff had the following severe impairments: lumbar degenerative disc disease; myofascial pain syndrome; right upper extremity carpal tunnel syndrome; and trigger finger. (AR 18.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 21.) At step four, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity to perform a full range of light work and sedentary work as defined in the regulations. (AR 21.) At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (AR 29.) Plaintiff was not

1   under a disability from November 15, 2003 through December 31, 2008, the date last insured.

2   (AR 30.)

3                                        **III.**

4                               **LEGAL STANDARD**

5          Congress has provided that an individual may obtain judicial review of any final decision

6   of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

7   reviewing findings of fact in respect to the denial of benefits, this court "reviews the

8   Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

9   disturbed only if it is not supported by substantial evidence or is based on legal error."  Hill v.

10  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means more than a scintilla,

11  but less than a preponderance.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal

12  quotations and citations omitted).  "Substantial evidence is relevant evidence which, considering

13  the record as a whole, a reasonable person might accept as adequate to support a conclusion."

14  Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health &

15  Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

16         "[A] reviewing court must consider the entire record as a whole and may not affirm

17  simply by isolating a specific quantum of supporting evidence."  Hill, 698 F.3d at 1159 (quoting

18  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006).  However, it is not

19  this Court's function to second guess the ALJ's conclusions and substitute the court's judgment

20  for the ALJ's.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is

21  susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

22  upheld.")

23                                       **IV.**

24                          **DISCUSSION AND ANALYSIS**

25         Plaintiff alleges that the ALJ erred by 1) failing to conclude that Plaintiff's psychiatric

26  condition was severe; 2) determining Plaintiff psychiatric and orthopedic Residual Functional

27  Capacity (" RFC"); and 3) finding that Plaintiff's testimony was not credible.  (Plaintiff's

28  Opening Brief 6-7, ECF No. 16.)

### A.   The ALJ Did Not Err in Concluding That Plaintiff's Psychiatric Condition Was Not Severe

Plaintiff contends that, although the ALJ found his mental impairment of depression and anxiety cause no more than minimal limitations in his ability to perform basic mental work activities, the consultant examiner, Dr. Lopez, found that Plaintiff's impairment is severe. (ECF No. 16 at 7.)  Plaintiff alleges that the ALJ imposed a more stringent standard than is mandated by law in determining Plaintiff's psychiatric limitations and should have relied on the medical opinion of Dr. Lopez.  (Id. at 8.)  Plaintiff argues that the opinions of Drs. Perez, Castillo and Barnett support his contention that his mental impairments are severe.  (Id. at 9-12.)

Defendant replies that the ALJ properly conducted the "special technique" set forth at 20 C.F.R. § 404.1520a to find Plaintiff's mental disabilities nonsevere. (Def.'s Opp. to Pl. Opening Br. 10-12, ECF No. 29.)  Defendant contends that Plaintiff's reliance on Dr. Lopez' opinion is misguided as it fully supports the ALJ's non-severity finding.  (Id. at 13.)  Additionally, since Drs. Canga and Barnett do not specialize in psychiatry or psychology their opinions are to be given lessor weight. (Id. at 14.)

#### 1.   Legal Standard

At the step two inquiry, the ALJ is to determine whether the plaintiff has a medically severe impairment or combination of impairments.   20 C.F.R. §  404.1520(a)(4)(ii).   "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).   As relevant to the issue to be decided here, basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," for example: "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  Smolen, 80 F.3d at 1290 (quoting Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)).

2. <u>ALJ's Findings</u>

The ALJ found that Plaintiff's medically determinable mental impairments of depression and anxiety did not cause more than minimal limitation on Plaintiff's ability to perform basic mental work and were therefore nonsevere.  (AR 19.)  Based upon Plaintiff's reports that he was able to handle his personal care and hygiene without problems, do some household chores, vacuum, wash dishes, mow the lawn when his pain level permits, drive, go out on the weekends, go shopping on the weekends, watch television and listen to music, and Dr. Castillo's report, dated May 7, 2008, reporting Plaintiff's similar abilities, the ALJ found that Plaintiff had mild limitation to activities of daily living.  (AR 20.)

The ALJ found that Plaintiff had no limitations in the area of social functioning.  Plaintiff reported that he spends time with others, primarily his girlfriend and his brother every weekend, and does not have problems getting along with his family, friends, neighbors, or others.  Plaintiff has multiple family members who live in the vicinity of his home and he reports a fairly high level of family support.  (AR 19.)

The ALJ found that Plaintiff had no limitations in the area of concentration, persistence or pace because his cognitive ability and memory are intact and the medical reports indicate that he functions at a high level that would allow him to do basic work activity.  (AR 20.)

Finally, the ALJ found that Plaintiff had experienced no episodes of decompensation that had been of extended duration.  The record did not reflect any periods of decompensation and Plaintiff has not undergone any psychiatric treatment.  (AR 20.)

3. <u>Discussion</u>

To be entitled to benefits, Plaintiff must establish disability on or before December 31, 2008.  (AR 16.)  In considering Plaintiff's claim, the ALJ determined that Plaintiff had not been under a disability within the meaning of the Social Security Act from November 15, 2003 through the date of last insured.  (AR 16.)

The key issue in this case is whether Plaintiff had been disabled before his insurance coverage ended on December 31, 2008.  Accordingly, the medical evidence shall be reviewed to determine the status of Plaintiff's medical condition on or before December 31, 2008.  While

1    medical evaluations made after the expiration of Plaintiff's insured status are relevant to the

2    evaluation of a preexisting condition, <u>Smith v. Bowen</u>, 849 F.2d 1222, 1226 (9th Cir. 1988), it is

3    Plaintiff's condition prior to the expiration of the disability period that is relevant to the

4    determination of whether he was disabled within the insured period.

5         Dr. Perez examined Plaintiff on June 12, 2007.  Plaintiff is able to walk one mile, stand

6    for approximately one hour, lift ten pounds, and sit for thirty minutes.  (AR 184.)  Plaintiff

7    described the onset of suicidal ideation and but stated that taking Cymbalta has caused the

8    suicidal ideation to decline and has been fairly effective in curbing his depression.  On the

9    Cymbalta, Plaintiff's panic attacks are noted perhaps once a week.  Plaintiff sleeps about eight

10   hours per night, and complains of a mild decrease in memory and concentration.  (AR 185.)

11        Plaintiff was involved in a long term consensual relationship which he described as stable

12   and supportive.  Plaintiff had multiple family members who live in the vicinity of his home and

13   described a high level of social support.  (AR 186.)  Plaintiff described a "fairly active round of

14   daily activities."  (AR 187.)  Plaintiff walked daily, had various friends in the area and spent a

15   great deal of time visiting them.  Plaintiff stated that remaining actively involved outside his

16   home decreased his pain.  (AR 187.)

17        Plaintiff's affect was broad ranging and appropriate to content.  Mood was unremarkable.

18   Plaintiff did not appear to be particularly depressed or anxious during the interview.  Presentation

19   was quite unremarkable.  Other than limping, Plaintiff did not exhibit significant pain behavior.

20   He did not complain of pain or request a break during the examination.  (AR 187.)  Cognitive

21   status was grossly normal and severe interference in attention, concentration, recent and remote

22   memory did not appear to be present.  Insight into his condition was well preserved and Plaintiff

23   did not display evidence of a severe deficit in judgment.  (AR 188.)  Dr. Perez diagnosed pain

24   disorder with mixed physical and psychological elements and depressive disorder not otherwise

25   specified.  (AR 189. )  He found that the standard of care for Plaintiff's conditions include the

26   administration of antidepressant medication and that Plaintiff would benefit from brief supportive

27   psychotherapy.  (AR 190.)

28        Plaintiff was examined by Dr. Castillo on May 7, 2008.  (AR 291-94.)  Plaintiff stated that

1   due to his injuries and inability to work he started experiencing depression and anxiety.  He was

2   undergoing extreme financial difficulties and his house had been foreclosed upon.  Plaintiff

3   reported poor appetite, difficulty concentrating, poor memory, and decreased energy level.  Due

4   to being prescribed Xanax, he reported that his anxiety and sleep had improved. (AR 291.)

5          Plaintiff stated that his daily activities included taking walks in the morning and evening,

6   doing household chores such as washing dishes, vacuuming, sweeping, doing laundry, cooking,

7   and shopping.  Plaintiff could drive and use public transportation independently.  Dr. Castillo

8   opined that Plaintiff did well when assessed, but still had mental limitations as his mental illness

9   remained uncorrected.  (AR 293.)

10         Dr. Castillo found that Plaintiff had no limitations on his ability to interact with others at

11  an age-appropriate level, ability to understand instructions, ability to sustain an ordinary routine

12  without sustained supervision, ability to complete simple tasks, and ability to avoid normal

13  hazards.  Plaintiff had a slight limitation on his ability to concentrate for at least two hour

14  increments at a time in order to maintain a regular work schedule.  Plaintiff had moderate

15  limitations on his ability to complete detailed or complex tasks.  (AR 293.)

16         Plaintiff's contention that Dr. Lopez found Plaintiff's mental impairments to be severe is

17  not supported by the record.  Dr. Lopez examined Plaintiff on January 29, 2008.  (AR 339-56.)

18  Plaintiff complained of depression, anxiety, occasional crying, the need for medication to help his

19  sleep, diminished appetite with fifty pounds of weight loss, and low sexual interest with erectile

20  dysfunction.  (AR 342.)  Plaintiff had a girlfriend and they got along well with no serious

21  problems in their relationship.  (AR 344.)  Dr. Lopez found that Plaintiff has suffered from

22  depression, but at this point he was not suffering from severe depression.  (AR 351.)  However,

23  his depression was clinically significant and had been too lengthy to classify as an adjustment

24  disorder.  (AR 351-52.)  Dr. Lopez found that Plaintiff's impairment to daily living, social

25  functioning, concentration and adaption was mild.  Plaintiff was not precluded from doing his

26  usual work on a psychiatric basis.  (AR 354.)

27         Plaintiff was reevaluated by Dr. Lopez on June 12, 2009.  (AR 470-482.)  Dr. Lopez

28  found that Plaintiff had not undergone any psychological treatment since his initial examination

1  of Plaintiff on January 29, 2008.  Plaintiff reported that his physical condition remained the same

2  and Dr. Lopez found that psychologically, Plaintiff was essentially unchanged.   Plaintiff was

3  upset due to his financial situation, but his relationships remained strong.  He was continuing to

4  take his medication with some benefit.  (AR 472.)

5          There had been no periods of total and temporary psychiatric disability between the last

6  examination and this examination and Plaintiff was permanent and stationary.  (AR 479.)   All

7  Plaintiff's work function impairments were found to be slight.  Plaintiff's GAF was 60 and he had

8  moderate symptoms of depression.  (AR 480.)  As during the last evaluation, Plaintiff had mild

9  impairment to daily living, social functioning, concentration and adaption.   (AR 480-81.)

10  Plaintiff was not precluded from doing his usual work on a purely psychological basis.  (AR 481.)

11          In this instance, the reports of Drs. Perez, Lopez and Castillo support the ALJ's

12  determination that although Plaintiff had been diagnosed with depression, his depression was not

13  severe.  To meet the listing criteria Plaintiff's mental disability would need to result in a marked

14  restriction in two of the listed areas: activities of daily living, difficulties in maintaining social

15  functioning, or difficulties in maintaining concentration, persistence or pace; or in repeated

16  episodes of decompensation that were of extended duration.  20 C.F.R. Pt. 404, Subpt. P., App.1,

17  § 12.04. Both of the examining psychiatrists found that Plaintiff's mental limitations on his daily

18  living activities, social functioning, and in the area of concentration, persistence or pace were

19  non-existent to mild and there were no episodes of decompensation that were of extended

20  duration. See 20 C.F.R. § 404.1520a(d)(2) (if degree of limitation in the functional areas is none

21  or mild the impairment is generally considered not severe).

22          Further, there are only limited mentions of depression during the period of time that

23  Plaintiff was insured and the medical records support the finding as Plaintiff's depression

24  responded well to treatment.  On March 24, 2004, Plaintiff was examined by Dr. Barnett and

25  complained of weight loss and increasing levels of depression due to his illness.  He believed the

26  medication was adding to his depression.  (AR 205.)

27          On April 3, 2008, Plaintiff had a follow up with Dr. Barnett, and indicated that with his

28  medications he was doing quite well.  (AR 416.)  On June 30, 2008, Plaintiff reported that he was

1   able to get out of the house more and was feeling less socially isolated, although he felt some
2   increased depression because the pain was limiting his activities and making him feel more
3   socially isolated.  (AR 419.)

4          The medical records after the date last insured do not lead to the conclusion that Plaintiff's
5   mental disability was greater than reflected in the records during the insured period.  During his
6   visit with Dr. Barnett on March 18, 2009, Plaintiff stated he had done reasonably well since his
7   injection in December of 2008.  He was able to be more active taking care of his family.  As his
8   pain increases so does his depression, but the Cymbalta helps the depression from getting out of
9   control.  (AR 422.)

10          On May 4, 2009, Plaintiff stated that he had been doing fairly well.  Plaintiff described
11  having a panic attack that was triggered by stress.  (AR 424.)  On November 9, 2009, Plaintiff
12  complained of more problems with depression and anxiety.  Plaintiff had a flat affect and
13  presented some signs of mild anxiety.  (AR 428.)  On December 7, 2009, Plaintiff complained of
14  more pain in the back and leg area, and a significant amount of muscle spasms.  Plaintiff also
15  reported continuing symptoms of anxiety and depression.  (AR 430.)

16          When Plaintiff was seen by Dr. Barnett on February 2, 2010, Plaintiff was doing
17  exceedingly well.  The injection on January 20, 2010 gave him greater than seventy-five percent
18  relief.  Plaintiff had significantly better range of motion in the hips and was stretching the
19  piriformis every day.  Plaintiff was able to walk for thirty to forty minutes every day for exercise.
20  Plaintiff stated that with his medications he is doing extremely well for pain control.  Plaintiff had
21  significantly improved range of motion of the lumbar spine, significantly less tenderness with
22  only mild tenderness over the left SI joint and piriformis muscle.  Plaintiff's range of motion in
23  his hips was dramatically improved.  (AR 434.)

24          The ALJ's determination that Plaintiff's psychiatric condition was not severe is supported
25  by substantial evidence.  The did not err in finding that Plaintiff's mental impairments were not
26  severe within the meaning of the Social Security Act through the date of last insured.

27  ///

28  ///

10

1

2        **2.      The ALJ Did Not Err in Determining Plaintiff's Psychiatric and Orthopedic RFC**

3        a.      Dr. Canga's Opinion

4        Plaintiff argues that the ALJ erred by not giving deference to the opinion of Plaintiff's

5   treating physician, Dr. Canga.  Dr. Canga stated that Plaintiff's RFC did not allow him to perform

6   a full range of sedentary work.  (ECF No. 16 at 12-18.)  Defendant responds that the ALJ

7   properly discounted Dr. Canga's opinion because it directly contradicted the objective medical

8   record and Plaintiff's self-reports and was unsupported and contradicted by Plaintiff's

9   conservative treatment.  (ECF No. 29 at 21-22.)

10        A treating physician's opinion is generally entitled to greater weight than that of a

11   nontreating physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  If a treating

12   physician's opinion is contradicted by another doctor, it may be rejected only for "specific and

13   legitimate reasons" supported by substantial evidence in the record.  Ryan v. Commissioner of

14   Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216

15   (9th Cir. 2005)).  The contrary opinion of a non-examining expert is not sufficient by itself to

16   constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion,

17   however, "it may constitute substantial evidence when it is consistent with other independent

18   evidence in the record."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

19        On December 4, 2010, Dr. Canga filed out a Physical Residual Functional Capacity

20   Questionnaire.  (AR 386-389.)   Dr. Canga indicated that Plaintiff is not a malinger.  Dr. Canga

21   stated that Plaintiff will constantly experience pain or symptoms severe enough to interfere with

22   attention and concentration needed to perform even simple work tasks.  Plaintiff is incapable of

23   performing even low stress jobs.  Plaintiff is unable to sit and can stand for only five minutes.

24   (AR 387.)   In an eight hour day, Plaintiff can sit, stand, or walk for less than thirty minutes.

25   Plaintiff requires an assistance device.   Plaintiff can never lift any weight. Plaintiff may

26   occasionally look down, turn his head to the right or left, look up or hold his head in a static

27   position because he develops neck pain.  (AR 388.)  Plaintiff can never twist, stoop, or crouch and

28   rarely climb a ladder or stairs.  Plaintiff is limited in his reaching and can only use his right arm,

11

1    hand or fingers ten to twenty percent of the time during an eight hour day.  (AR 389.)

2         The ALJ found no support for Dr. Canga's Physical Residual Functional Capacity

3    Questionnaire.  (AR 27-28.)  Because the report primarily summarized Plaintiff's subjective

4    complaints and diagnoses and did not present clinical findings to support its conclusions, the ALJ

5    gave little evidentiary weight to the opinion.  (AR 28.)

6         Plaintiff argues that the ALJ should have given Dr. Canga's opinion greater weight due to

7    the longitudinal treatment record and that the ALJ failed to take into consideration that Dr.

8    Canga's medical opinion and reports are what make up a large part of the treatment record.

9    However, the ALJ did address the length of treatment and Dr. Canga's medical records.  The ALJ

10   found that Dr. Canga treated Plaintiff from January 2004 through January 21, 2010, and his

11   clinical findings were minimal and not at a level considered to be disabling.  While Dr. Canga

12   consistently reported Plaintiff's complaints, the medical records provided little or no objective

13   findings on examination to support Plaintiff's disability status throughout the period of treatment.

14   Most findings consisted of tenderness on palpation of the back with vital signs within normal

15   limits.  (AR 22.)

16        Review of the Dr. Canga's records reveals that Plaintiff's subjective complaints are

17   documented, but very minimal objective findings are recorded.  (AR 203-77; 375; 391-414.)  The

18   ALJ need not accept a treating physician's opinion that is brief, conclusory, and unsupported by

19   clinical findings.  Tonapetyan, 242 F.3d at 1149.  An ALJ may reject the treating physician's

20   opinion where it is largely based on the claimant's self-reports that have been properly discounted

21   as incredible.  Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008). Here, Dr. Canga's

22   medical records are largely based on Plaintiff's subjective complaints, and as discussed below,

23   the ALJ properly found that Plaintiff's complaints were not credible.

24        Further, Dr. Canga's conclusions are not supported by the treatment records.   For

25   example, Dr. Canga stated that Plaintiff may occasionally look down, turn his head to the right or

26   left, look up or hold his head in a static position because he develops neck pain, however, the

27   treatment records do not show objective findings of neck pain.  Similarly, Dr. Canga stated that

28   Plaintiff will constantly experience pain or symptoms severe enough to interfere with attention

and concentration needed to perform even simple work tasks, however the medical record demonstrates that Plaintiff does well on his medication, there are extended periods of time in which Plaintiff's pain has been well controlled, and Dr. Canga's records do not address Plaintiff having issues with attention or concentration.

Plaintiff also argues that the ALJ should have adopted the report of Dr. Canga because it is consistent with the medical records of Dr. Barnett, another treating physician.  However, Dr. Barnett's records indicate that Plaintiff received significant relief from his back pain with injections.

On April 3, 2008, Dr. Barnett noted that Plaintiff indicated that, with his medications, he is doing quite well.  He was out walking twice per day and was eighty percent better since his injection.  Plaintiff had mild tenderness over the left SI joint and pirifomis muscle and good range of motion of the lumbar spine.  (AR 416.)  On May 29, 2008, Plaintiff reported that the last injection worked extremely well.  He was still getting some relief, but the pain had returned somewhat.  (AR 418.)  On October 23, 2008, Plaintiff stated he had received about fifty percent relief for two months and was able to increase his activity.  (AR 421.)

On March 18, 2009, Plaintiff stated he had done reasonably well since his injection in December of 2008.  He received three to four months of very good relief from the injection.  He was able to be more active taking care of his family.  (AR 422.)  On May 4, 2009, Plaintiff stated that he had been doing fairly well.  In the past two weeks, although he did complain of some generalized back pain, Plaintiff's back pain had dramatically diminished due to an injection.  (AR 424.)

On February 2, 2010, Plaintiff was doing exceedingly well.  The injection on January 20, 2010 provided greater than seventy-five percent relief.  Plaintiff had significantly better range of motion in the hips and is stretching the piriformis every day.  Plaintiff is able to walk for thirty to forty minutes every day for exercise.  Plaintiff states with his medications he is doing extremely well for pain control.  Plaintiff had significantly improved range of motion of the lumbar spine, significantly less tenderness with only mild tenderness over the left SI joint and piriformis muscle.  Plaintiff's range of motion in his hips was dramatically improved.  (AR 434.)

Contrary to Plaintiff's contention, the treatment records of Dr. Barnett are not consistent with the opinion of Dr. Canga that Plaintiff is able to sit, stand, or walk for less than thirty minutes in an eight hour day; is unable to sit and can stand for only five minutes; requires an assistance device; and can never lift any weight.  The Court finds that the ALJ did not err in giving little weight to the Physical Residual Functional Capacity Questionnaire completed by Dr. Canga.

### b.   Dr. Nowlan's Opinion

Plaintiff contends that the ALJ should not have given significant weight to the opinion of the consultative examination by Dr. Nowlan.  Additionally, Plaintiff argues that as an internal medicine specialist, Dr. Nowlan is not the correct medical specialty to address Plaintiff's physical and orthopedic complaints, and his examination was stale.  (Id. at 17.)  Defendant replies that Plaintiff's argument that Dr. Nowlan's report was stale is without merit as the subsequent medical records are consistent with Dr. Nowlan's findings.  (Id. at 24.)  Dr. Nowlan, as an internal medicine specialist, is an appropriate specialist to address how Plaintiff's multiple conditions affect his functional ability.  Inconsistently, Plaintiff is asking the Court to find that the ALJ should have relied on the opinion of Dr. Canga, who is also an internal medicine physician.  Id. at 30.)

Where the medical evidence is conflicting, it is for the ALJ to determine credibility and resolve the conflict.  Thomas, 278 F.3d at 956-57.   The opinion of the treating physician may be rejected in favor of the opinion of an examining physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record."  Magallanes v. Barnhart, 881 F.2d 747, 751 (9th Cir. 1989).  This burden can be met by the ALJ setting out a detailed thorough summary of the facts and conflicting evidence, stating his interpretation of the evidence, and making findings.  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600-01 (9th Cir. 1999).   "[W]hen an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence."  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)(internal punctuation omitted).

Plaintiff was examined by Dr. Nowlan on May 20, 2008.  (AR 295-298.)  Dr. Nowlan conducted a physical examination and noted that Plaintiff could walk on his heels and toes and used no assistance devices.  (AR 296.)  Plaintiff had lateral flexion of 0-45 degrees, flexion of 0-50 degrees, extension of 0-60 degrees, and rotation of 0-80 degrees in his cervical region.  In his lumbar region Plaintiff had flexion of 0-90 degrees, extension of 0-25 degrees, and lateral flexion of 0-25 degrees.  Plaintiff was able to bend over and touch his toes, but came up slowly stating that it hurt.  Plaintiff's thumb and finger joint flexion and extension of the proximal phalanx was 70 degrees and distal phalanx was 90 degrees bilaterally.  Motor strength was 5/5 and Plaintiff was very muscular.  (AR 297.)

Dr. Nowlan found that there was little in the way of objective findings that support Plaintiff's complaint of back pain.  The MRI did not show much that would produce pain.  Dr. Nowlan found that Plaintiff could stand and walk for six hours in an eight hour day, sitting would be unlimited, he required no assistance device, could lift 20 pounds frequently and 40 pound occasionally, and there were no postural or manipulative limitations.  (AR 297-98.)

The ALJ gave great weight to the opinion of Dr. Nowlan because he had an opportunity to review the entire medical record and his opinion was based upon a thorough review of the evidence and familiarity with Social Security Rules and Regulations and legal standards set forth within.  The ALJ found that Dr. Nowlan's opinion was well-supported by the evidence, including Plaintiff's medical history, clinical and objective signs and findings as well as detailed treatment notes that provided a reasonable basis for Plaintiff's chronic symptoms.  Furthermore, the ALJ found that Dr. Nowlan's opinion was not inconsistent with other substantial evidence of record.  (AR 27.)

In making this determination the ALJ set out a detailed thorough summary of the facts and conflicting evidence.  The ALJ evaluated Dr. Burgar's opinion of Plaintiff hand complaints; Dr. Canga's lack of objective findings; Plaintiff's treatment by the Stockton Pain Medical Group; Dr. Nowlan's opinion; diagnostic findings of Drs. Zink-Brody and Tait; the opinion of Drs. Perez, Lopez, and Castillo; the Physical Residual Functional Capacity Assessments by Drs. Ginsburg and Canga; Psychiatric Review Technique by Dr. Murillo; case analysis by Dr. Middleton; and

1  Plaintiff's statements regarding his alleged disabilities.  (AR 21-28.)

2         In his analysis, the ALJ specifically set forth his interpretation of the evidence, and made

3  findings.  The ALJ found that the objective medical evidence is inconsistent with Plaintiff's

4  allegations of disabling pain.  Physical examinations were generally unremarkable with few

5  abnormal findings.  During the period of adjudication, the treating doctor's clinical findings were

6  quite minimal and were not at a level considered disabling.  (AR 22.)  Plaintiff was examined by

7  various medical facilities that did not find any significant abnormalities during examination.

8  Similarly, the most recent findings show few objective findings that would justify a more

9  restrictive RFC.  Diagnostic findings were unremarkable and did not show any significant

10  orthopedic condition to support the alleged disabling symptoms. (AR 23.)

11         Plaintiff's treatment for his complaints of pain had been conservative in nature and not the

12  type that would be expected from a disabling condition.  Plaintiff testified that his medications do

13  not produce side effects that would preclude sustained work activity.  Plaintiff described an active

14  life that is inconsistent with limitations that would preclude work activity and are consistent with

15  an ability to do a wide range of light and sedentary work activity.  (AR 25.)  The ALJ set forth

16  reasons for giving weight to his opinion that are supported by substantial evidence in the record.

17         While Plaintiff contends that ALJ's reliance on the opinion of Dr. Nowlan is flawed

18  because it is stale, Dr. Nowlan's examination occurred on May 20, 2008, seven months prior to

19  the expiration of the disability period.  Further, contrary to Plaintiff's assertion that his condition

20  deteriorated after the examination by Dr. Nowlan, Dr. Barnett's medical records show that during

21  this time period Plaintiff was responding well to the injections that he was receiving and was able

22  to increase his activity.

23         Finally, the Court finds no merit in Plaintiff's argument that since Dr. Nowlan is a

24  specialist in internal medicine he is not the correct specialty to address Plaintiff's physical and

25  orthopedic complaints.  While specialists are given greater deference when evaluating medical

26  claims, 20 C.F.R. § 404.1527(c)(5), the Court notes that Dr. Canga, who was Plaintiff's primary

27  treating physician, also specializes in internal medicine.  (AR 257.)  While Plaintiff argues that

28  Dr. Nowlan is the incorrect specialist to address Plaintiff's physical and orthopedic complaints,

1   his opinion is not inconsistent with that of Dr. Burgar, orthopedic specialist, who treated Plaintiff

2   on March 15, 2007.  (AR 198-200).  Dr. Burgar noted that physical examination of the spine

3   reveals full active range of motion to include bilateral shoulders.  Elbows have full range of

4   motion.  Wrist range of motion right compared to left is 70/56, flexion 55/60.  Full active digital

5   range of motion is noted.  Motor strength testing is 5/5.  Plaintiff has decreased right grip

6   strength.  Plaintiff shows "frank thickening of upon [sic] the flexor tendon sheath to the right long

7   and ring finger with nodularly noted over the flexor tendons and active triggering noted upon

8   examination.  There is no evidence of instability noted upon the hand or wrist.  He is otherwise

9   neurovascularly intact."  (AR 199.)

10          The ALJ did not err in basing Plaintiff's RFC in large part on the report of Dr. Nowlan.

11          c.      Psychiatric RFC

12          Plaintiff argues that the ALJ erred by relying on the opinion of non-examining

13  consultative examiner Dr. Murillo, rather than the reports of Drs. Lopez and Castillo in finding

14  Plaintiff's RFC to be non-severe.  (ECF No. 16 at 18.)  Plaintiff contends that the ALJ's

15  psychiatric RFC assessment is conclusory and does not contain any rational or reference to

16  supporting evidence.  (Id.)  Defendant contends that the ALJ's RFC determination is supported by

17  substantial evidence .  (ECF No. 29 at 24.)

18          As discussed above, the Court finds that the ALJ did not err in finding that Plaintiff's

19  mental impairments were not severe within the meaning of the Social Security Act through the

20  date of last insured.  In determining Plaintiff's RFC the ALJ did consider the mental health

21  findings of Dr. Perez, Dr. Lopez, and Dr. Castillo.  (AR 24.)  The ALJ found that the objective

22  medical evidence and findings upon mental examination were fully consistent with a finding of a

23  nonsevere mental impairment.  (AR 24.)

24          Contrary to Plaintiff's contention that the ALJ's opinion regarding his mental impairments

25  is conclusory, in determining Plaintiff's RFC the ALJ considered the opinions of Drs. Perez,

26  Lopez, Castillo, Murillo, and Middleton.  (AR 24, 26, 28.)  The ALJ found that Plaintiff's mental

27  health status examinations were unremarkable and did not support a finding of a medically

28  determined severe mental condition.  The objective medical evidence and findings on mental

17

1    examination are fully consistent with a finding of nonsevere mental impairment.  (AR 24.)

2    Plaintiff's treatment for his complaints of mental impairments has been conservative in nature and

3    not the type that would be expected from a disabling condition.   Plaintiff testified that his

4    medications do not produce side effects that would preclude sustained work activity.   Mental

5    examination findings have been unremarkable and there have been no psychiatric

6    hospitalizations.  Plaintiff describes an active life that is inconsistent with limitations that would

7    preclude work activity and are consistent with an ability to do a wide range of light and sedentary

8    work activity.   (AR 25.)    The record reflects clinical findings to show that Plaintiff's mental

9    health treatment has been effective.  Plaintiff did not receive any mental health treatment during

10   the period of adjudication.  (AR 24, 26.)

11        Further, Dr. Castillo found that Plaintiff had no limitations on his ability to interact with

12   others at an age-appropriate level, ability to understand instructions, ability to sustain an ordinary

13   routine without sustained supervision, ability to complete simple tasks, and ability to avoid

14   normal hazards.  Plaintiff had a slight limitation on his ability to concentrate for at least two hour

15   increments at a time in order to maintain a regular work schedule.   Plaintiff had moderate

16   limitations on his ability to complete detailed or complex tasks.  (AR 293.)  Dr. Lopez found that

17   Plaintiff's impairment to daily living, social functioning, concentration and adaption was mild.

18   Plaintiff was not precluded from doing his usual work on a psychiatric basis.  (AR 354.)

19        While Plaintiff argues that both Drs. Lopez and Castillo assessed Plaintiff with a Global

20   Assessment of Function ("GAF") Score[2] of 60, the ALJ is not required to give controlling weight

21   to the treating physician's GAF score and failing to mention the GAF score would not render the

22   ALJ's assessment deficient.  Green v. Astrue, No. 5:10-cv-01294-AJW, 2011 WL 2785741, at *3

23   (C.D.Cal. July 15, 2011); see Williams v. Astrue, No. 5:08-cv-01378 JC, 2010 WL 147957, at *6

---

24   [2] "A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of
25   functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to
     impairments in functioning due to physical or environmental limitations." Cornelison v. Astrue, 2011 WL 6001698,
26   at *4 n.6 (C.D. Cal. Nov. 30, 2011) (citing American Psychiatric Association, Diagnostic and Statistical Manual of
     Mental Disorders ("DSM–IV"), at 32 (4th ed.2000)).  "A GAF score in the range of 51–60 indicates moderate
27   symptoms or moderate difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with peers
     or coworkers)." Cornelison,  2011 WL 6001698, at 4 n.6 (citing  American Psychiatric Association, Diagnostic and
28   Statistical Manual of Mental Disorders ("DSM–IV"), at 34).

(C.D.Cal. January 11, 2010) ("GAF scale does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorder listing.") (quoting 56 Fed.Reg. 50746, 50764-65 (August 21, 2000)).

The findings of Drs. Lopez and Castillo are not inconsistent with the ALJ's RFC that Plaintiff was able to perform a full-range of light work.

d.    The ALJ Was Not Required to Call a Medical Advisor

Plaintiff argues that the failure of the ALJ to call a medical advisor to the hearing to testify to the medical records that had been added to the record since the state agency medical consultants had reviewed the case requires the case to be reversed.   (ECF No. 16 at 22.) Defendant argues that the ALJ did not need to utilize a medical advisor because medical records during the relevant time period were definitive, and the new records were consistent with the evidence already in the record.  (ECF No. 29 at 27.)

Social Security Ruling ("SSR") 96-9p states that an ALJ must obtain an updated medical opinion from an expert when no additional medical evidence has been received but, in the ALJ's opinion, the symptoms, signs, and laboratory findings suggest that a judgment of equivalence might be reasonable; or where additional medical evidence is received that, in the ALJ's opinion, "may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p, 1996 WL 374180, at *3-4 (July 2, 1996).   In this instance, the ALJ found that the subsequent medical records established that Plaintiff was responding well to treatment.   The subsequent medical records are consistent with the prior medical records that were already in the record and had been reviewed by the State examiners; and therefore, the ALJ did not err by failing to call a medical advisor to review the new evidence in the record.

**3.    The ALJ Did Not Err in Determining Plaintiff's Credibility**

Plaintiff contends that the ALJ erred in concluding that Plaintiff's testimony was not credible.  (ECF No. 16 at 23-28.)   Defendant argues that the ALJ provided a valid basis for finding Plaintiff not credible and his reasons are supported by substantial evidence.  (ECF No. 29 at 15.)

An ALJ is not required to believe every allegation of a disabling impairment.  Orn, 495 F.3d at 636.  Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of his symptoms by offering "clear and convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

The ALJ found that Plaintiff's severe impairments of lumbar degenerative disc disease, myofasical pain syndrome, upper right extremity carpal tunnel syndrome, and trigger finger could reasonably be expected to cause the alleged symptoms, however he found that Plaintiff's statements regarding the intensity, persistence, and limiting effects were not credible to the extent that they are inconsistent with the RFC.  The ALJ found that the record does not contain evidence to show that Plaintiff is functionally unable to work.  Physical examination and clinical findings were unremarkable and inconsistent with Plaintiff's allegations of disabling pain.  (AR 22.)

The ALJ considered that Plaintiff did not receive any treatment for his alleged mental health issues.  (AR 26.)  Although Plaintiff is alleging that he has a disabling mental condition, he has not sought treatment that was offered to him.  During the hearing, Plaintiff stated that Worker's Compensation had referred him to a counselor in San Jose for his depression, but

1     Plaintiff could not go all the way to San Jose for that type of treatment.  (AR 45.)  The ALJ may

2     consider the claimant's lack of treatment in making a credibility determination.  <u>Burch</u>, 400 F.3d

3     at 681.

4          The ALJ also found that the record reflects that Plaintiff's treatment was effective in

5     stabilizing his mental and physical conditions.  (AR 25-26.)  As discussed above, review of the

6     record reflects that Plaintiff responded well to treatment for his pain and depression.

7          In evaluating Plaintiff's subjective complaints of pain, the ALJ considered that Plaintiff's

8     treatment has been conservative in nature and not the type that one would expect from a disabling

9     condition.   (AR 25.) The ALJ found that Plaintiff's treatment for his back pain has been

10    conservative.  The ALJ may make a reasonable inference that the pain in not as severe as alleged

11    where there is evidence that the claimant received only conservative treatment.  <u>Tommasetti</u>, 533

12    F.3d at 1039.

13         The ALJ specifically identified two statements made by Plaintiff in making the credibility

14    determination.  (AR 26.)  First, Plaintiff stated during his February 6, 2008 examination by Dr.

15    Lopez that he had decreased appetite and had lost fifty pounds over a year's time.  (AR 342.)

16    Plaintiff told Dr. Perez on June 12, 2007, that he had significant depression that had been present

17    for about two years.  (AR 185.)

18         A review of Dr. Canga's medical records shows that Plaintiff weighed 198.5 pounds on

19    February 7, 2008.  (AR 209.)  On January 20, 2004, Plaintiff weighed 208 pounds, and weighed

20    209 on January 18, 2005.  (AR 277, 259.)  The record reveals that Plaintiff did gain and lose

21    approximately 13 pounds during 2004.  Plaintiff weighed 206 pounds on February 8, 2006.  (AR

22    244.)  On January 11, 2007, Plaintiff weighed 187.4 pounds.  (AR 227.)  On February 1, 2007,

23    Plaintiff weighed 189 pounds.  (AR 226.)  On January 15, 2008, Plaintiff weighed 193.9 pounds.

24    (AR 210.)  Upon review of Dr. Canga's medical records, Plaintiff's weight varied from a high of

25    222 on March 31, 2004 to a low of 182.9 pounds on October 24, 2007.  (AR 257, 214.) Although

26    Plaintiff claimed that he a decreased appetite and had lost weight, during the year prior to

27    Plaintiff's appointment his weight had increased by over nine pounds and the record does not

28    reflect that Plaintiff lost fifty pounds in any year as he stated to Dr. Lopez.  Plaintiff claimed to be

1   suffering from weight loss due to a decrease in appetite, however he had gained nine pounds.

2   Additionally, Plaintiff's statement to Dr. Lopez that he lost fifty pounds in a year does suggest a

3   tendency to exaggerate that the ALJ properly considered in making his credibility determination.

4    Second, in Plaintiff's adult function report, he checked the box in the social activities

5   section that he had difficulty getting along with others, while in the information about abilities

6   section he checked the box that he did not have problems getting along with family, friends,

7   friends, neighbors or others.  (AR 115.)   The ALJ may consider the claimant's inconsistent

8   statements in making a credibility determination.  Tommasetti, 533 F.3d at 1039.

9    Furthermore, the ALJ found that Plaintiff reported limitations in functional ability that are

10  unsupported by the record and contradicted by Plaintiff's own statements.  (AR 26.)  During the

11  hearing, Plaintiff stated that he hardly leaves his home due to his depression.  (AR 43.)   However

12  during medical examinations he reported that he goes out walking twice a day (AR 416), can

13  walk for thirty to forty minutes (AR 434), spends a great deal of time visiting friends (AR 187),

14  goes grocery shopping (AR 44), and based upon review of the record goes to at least two doctor

15  appointments per month.

16   Because the ALJ's credibility determination is supported by credible evidence, the ALJ

17  did not err in discounting Plaintiff's complaints of pain.  "Where ... the ALJ has made specific

18  findings justifying a decision to disbelieve an allegation and those findings are supported by

19  substantial evidence in the record, our role is not to second-guess that decision." Morgan, 169

20  F.3d at 600 (internal quotation marks and alteration omitted).

**V.**

**CONCLUSION AND ORDER**

23   Based on the foregoing, the Court finds that the ALJ did not err in determining that

24  Plaintiff's psychiatric condition was not severe; in determining Plaintiff's psychiatric and

25  orthopedic RFC; or in finding that Plaintiff's testimony was not credible.  Accordingly,

26   IT  IS  HEREBY  ORDERED  that  Plaintiff's  appeal  from  the  decision  of  the

27  Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be

28  entered in favor of Defendant Commissioner of Social Security and against Plaintiff David Cerna

1    Verduzco.  The Clerk of the Court is directed to CLOSE this action.

2

3

4    IT IS SO ORDERED.

5

6    Dated:    **September 10, 2013**
                                          UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28